*Wm. Upham*, for the plaintiff in error.

*Timothy Merrill*, for the defendant in error.

---

GEORGE BLAKE *vs.* CHARLES HOWE.

A defendant in ejectment, who is in possession, under claim of title derived from the lessee of the plaintiff, cannot, by way of defence, show a paramount title in a stranger.

A, while tenant of the plaintiff, and under obligation to keep the premises free from taxes, suffered them to be sold for taxes, at publick vendue, and procured the purchaser to convoy to B for A's benefit, who conveyed to C. and D. as tenants in common, whereupon D conveyed to a stranger.   In ejectment by the plaintiff, against the tenant in possession, who essayed to hold under the title of such stranger, *held*, that the vendue title was fraudulent and void, and that A and C were interested and incompetent witnesses in the cause.

A witness, who is incompetent on the trial of a cause, is incompetent to prove the *facts* which are newly discovered, on a motion for a new trial ; although the plaintiff himself is competent to prove that the facts relied upon *are* newly discovered.

A party moving for a new trial, on the ground of surprise, must not only show a surprise, but that he is injured by it, and also the facts whereby he can obviate the difficulty in which the surprise consisted.

EJECTMENT, for a mill-lot and privileges, in Moretown.

Plea, not guilty, and verdict for the plaintiff.

At this term, the cause came on, to be argued upon a motion for a new trial, on the ground of *surprise ;* and also upon a motion

for a new trial founded upon the exception taken on the trial, *Washington February, 1826.* which appears in the following case, as allowed by the judge.

On the trial of the issue, joined between the parties in this *Blake vs. Howe.* cause, the plaintiff, to maintain the issue on his part, gave in evidence,

1. A deed of mortgage of the undivided moiety of the premises, mentioned in the plaintiff's declaration, from David Bancroft, jun. to the plaintiff, dated January 16, 1810, and acknowledged and recorded the same day.

2. A lease from the plaintiff to Cephas Carpenter, dated August 21, 1813, of the premises sued for.

3. A deed of quit-claim of the premises, from Stephen Pierce to Jacob Jones and Thomas Reed, dated August 29, 1818, and

4. A deed of quit-claim of one third of the premises, from the said Jacob Jones to the defendant, dated August 26, 1819, which deed, and the several other deeds aforesaid, are made a part of this case.

The plaintiff also proved, by the testimony of Stephen Pierce, that the premises sued for had been sold for the payment of one of the direct taxes, under an act of Congress of the United States, and that the same were purchased by Cornelius P. Van Ness, who had made an agreement with the said Cephas Carpenter, to quit-claim to him the title he should derive from said sale, in case he should obtain a deed from the collector; that the said Cornelius P. Van Ness did obtain a deed from the collector, and by the order of the said Cephas, executed to him the said Stephen the quit-claim deed aforesaid, the said Stephen having become surety for the said Cephas, to James H. Langdon, for the sum of two hundred and thirty dollars; that some time after the said Stephen had taken his deed from the said Cornelius P. the said Jacob Jones called upon the said Stephen and said he understood that the title to the premises was in him the said Stephen; to which the said Stephen replied, that he had a vendue title only, and that his title as it respected Jonathan Arms's moiety of the premises was bad, and that he the said Pierce told the said Jones, that he had taken the said deed from the said Van Ness, to hold for the benefit of said Carpenter, and for his own security for the said claim against him, as surety as aforesaid, and also for a further sum of about $100, due him from said Carpenter; that if the said Jones wished to purchase, he must agree with said Carpenter; but that he, Pierce, would not execute a conveyance until he was indemnified for his said liability, and secured for the demand aforesaid; that Jones did make a bargain for said premises with said Carpenter, and paid and secured to him the said Pierce, his lien upon said premises, upon which, the said Stephen executed to the said Jacob Jones and Thomas Reed the deed of quit-claim aforesaid; that about ten months before the purchase and conveyance last mentioned, the mills on the premises were burnt down, and that until burnt down, one moiety of said premises was occupied by a tenant under the said Jonathan Arms, and the other moiety by

*Washington,*
February,
1826.

Blake
*vs.*
Howe.

the said Cephas, under the plaintiff; and that said Carpenter was in possession of said premises when Pierce conveyed said premises to Jones and Reed as aforesaid, and that said Jones received the possession on that occasion from said Carpenter. It appeared also, that the defendant went into possession on receiving his said deed from said Jones, under said last mentioned deed. And that though legally demanded, he *did,* before the commencement of this suit, and still does refuse, to admit the plaintiff into possession.

It was admitted by the counsel for the plaintiff, that the defendant held a valid title to one undivided moiety of the premises mentioned in the plaintiff's declaration, derived from the said Jonathan Arms; and the defendant offered evidence to show that the title to the other moiety of said premises was in one Brigham Howe, under whom the defendant now claims to hold, and not in the plaintiff, which evidence so offered, the Court refused to admit. To which opinion of the Court, in rejecting said evidence, the defendant excepts.

After argument upon both motions, the opinion of the Court was delivered by

HUTCHINSON, J. This is an action of ejectment, for an undivided half of a mill lot and privilege, in the town of Moretown. It has been tried upon the general issue, and the plaintiff obtained a verdict. The Court are now called to a revision of the point decided at the trial, which appears in the exceptions then taken and allowed; also to decide upon a motion for a new trial, urged on the ground of an alleged surprise upon the defendant, in the testimony of one *Stephen Pierce,* whose testimony is summarily detailed in the exceptions.

It is proper to preserve the separate nature of these two questions, and not confound them at all, the first depending upon strict right, and the other being addressed to the sound discretion of the Court, upon an equitable as well as legal view of the cause. Upon reading the exceptions and the copy of the lease from the plaintiff to one Cephas Carpenter, made a part of the case, the plaintiff's *prima facie* right to recover and be let into the possession, as tenant in common with the owner of the other moiety of the premises, is put at rest. The defence set up, supposes that the plaintiff had made out sufficient title to drive the defendant in his defence, to set up a better title.

It is probably of but little consequence in the present action, who owned the other half of the premises; but the case shows that the defendant had a right to possess that, by title derived from *Jonathan Arms,* and that the plaintiff, before the commencement of this action, had requested the defendant to let him in as tenant in common, which the defendant refused.

It appears by the case, that the defendant offered evidence to show, that the title to the moiety of the premises now claimed by the plaintiff, was not in the plaintiff, but in one *Brigham Howe,* under whom the defendant claims to hold the same. This ev-

Washington,
February,
1826.

Blake
vs.
Howe.

idence was objected to by the plaintiff, and excluded by the Court. This is the decision we are called upon to revise ; and its correctness or incorrectness depends upon the question, whether the defendant stood in a situation which entitled him to set up an outstanding title, or purchase of such title, to screen himself from resigning the possession of the premises to the plaintiff?

It appears, by the testimony of *Stephen Pierce*, that *Cephas Carpenter* procured *C. P. Van Ness* to bid off the premises when sold for the direct tax, and also procured said vendue purchaser to convey the same to the witness, *Pierce*, to secure a debt due to him from *Carpenter ;* that he informed *Jones* of this, and that *Jones* made an agreement with *Carpenter*, by reason of which, *Pierce* conveyed the premises to *Jones & Reed.* It also appears, by the case, that *Jones* deeded to the defendant, and that he took possession under that deed. By adverting to the lease from the plaintiff to *Carpenter*, which was upon record soon after its date, it appears that *Carpenter* was to pay all the taxes upon the premises, during the continuance of his lease, for one of which taxes this sale was made. Now, if the testimony upon these points is taken for truth, *Carpenter* attempted the grossest fraud upon the plaintiff, and, by this circuitous series of conveyances, would now take the whole avails to himself. But the law will treat the vendue deed as void from the beginning, it being procured by, and for the benefit of, him who, as respects the plaintiff, was bound to pay the taxes and prevent a vendue sale. This is not all ; the above testimony, if true, shows *Carpenter* holding under the plaintiff, *Jones* under *Carpenter*, though the deed in form was from *Pierce*, the trustee of *Carpenter*, and the defendant under his deed from *Jones*. This, in the view of the Court, places the defendant in the place of *Carpenter*, as to this moiety ; the decision was, therefore, correct, excluding this testimony; for, according to the authorities cited, and all the decisions with which the Court have become acquainted, the tenant and sub-tenant must deliver up his possession to the landlord, before he can shield himself with an outstanding title, or one by him purchased in.

If the testimony thus offered had been of a character to contradict the testimony of *Pierce*, or any other testimony of the plaintiff, it ought to have been admitted. This, however, was not its character, nor was it offered for such a purpose.

But it is urged, that the defendant, when he purchased, might safely rely upon the title which appeared of record, and was not obliged to learn or notice the circumstances now relied upon, which do not appear of record. The Court in answer to this, are not aware that a vendue deed, void in its conception and growth to maturity, was ever established in favour of a *bona fide* purchaser, without notice. Yet, if such were the law, we should do injustice to apply it to a case like the present, where it seems the facts which would constitute the fraud, were not at all enveloped in secrecy. *Pierce* tells all the particulars to his vendue. No one will suspect that C. P. Van Ness would hesitate a

moment, to inform at whose request he bid off the premises, and at whose direction he deeded. The defendant, then, while his ignorance alone can warrant a pretence for the application of the above principle in his favour, must be presumed to know a fact so easily learnt.

Notwithstanding this question, apparent on the exception, judgment must be rendered on the verdict.

We will now examine the question of surprise. The defendant contends he was surprised by the testimony of *Pierce*, and produces sundry affidavits to show his ability to gainsay that testimony on a future trial. The affidavits of *Thomas Reed* and *Cephas Carpenter* are offered by the defendant, and objected to on account of interest. The situation of *Carpenter* appears on the exceptions, and these show that he had the whole benefit of the sale to *Jones & Reed ;* and, if their title should fail on account of the badness of the title procured by *Carpenter* to *Pierce*, and that badness fully known to *Carpenter*, as now appears, there would be a remedy against *Carpenter*, either at law or equity, for the money he received on the sale. His interest is sufficient to exclude his affidavit.

*Thomas Reed* appears, and is admitted to be, tenant in common, as to title, with *Brigham Howe*, under whom the defendant claims to set up his adverse title. It is contended that this only shows him to have an interest in the question, but not affected by the decision of this cause ; therefore its effect is upon his credit, not his competency. By law, the title of several tenants in common is *per mi et per tout*, as the law phrase is, and a recovery by one in ejectment enures for the benefit of the other, for many purposes. It avoids the running of the statute of limitations, and the possession acquired or retained by the decision of such action, enures equally to the benefit of all. He could not testify on the trial, if offered.

It is suggested, however, that the affidavits of interested witnesses may be used in motions for new trials. This is not correct with regard to the principal facts discovered and intended to be proved on a future trial. But, with regard to the fact, that the former testimony was a surprise, not being expected, or that the testimony relied upon is newly discovered, the affidavit of the party is admissible, and indeed, he is the only person who can make such affidavit. Both affidavits objected to, are excluded. The other affidavits but faintly apply to the point in question.

But there is a view of this question that renders unnecessary any very critical examination of the weight of the testimony opposed to that of *Pierce*. The Court have already suggested, that this question is addressed to their sound discretion, for the purpose of doing justice between the parties. Now, the defendant ought, not only to show a surprise, but to show that he is injured by it ; to show that, upon a new hearing, he can make out such a title as would probably be not only a legal, but equitable defence to the action. If he would claim any thing on

account of the title of *Brigham Howe*, he should show to the Court what that title is. That, when adduced, may appear but another link in the same chain of title under the plaintiff. Or, it may appear so wholly defective as to amount to no title whatever. It does not yet appear to the Court, that the defendant has any thing whatever to show, on another trial, which he did not in fact show on the former trial, except the testimony of those witnesses, whose affidavits the Court have already disposed of. Upon the whole view of the case, the Court direct that judgment be entered for the plaintiff, according to the verdict.

PRENTISS, J. being of counsel, did not sit in the cause.

*Nicholas Baylies* and *Wm. Upham*, for the plaintiff.

*Samuel Prentiss* and *O. H. Smith*, for the defendant.